**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| ZACHARIAH ROBERTSON, ANGEL HERNANDEZ, GORDON LUNSTED, and GREG HUGGINS individually and on behalf of all others similarly situated,<br><br>v.<br><br>AVERY TECHNICAL RESOURCES, INC. | **Case No.** _____ |

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| ZACHARIAH ROBERTSON, ANGEL HERNANDEZ, GORDON LUNSTED, and GREG HUGGINS individually and on behalf of all others similarly situated,<br><br>v.<br><br>ENBRIDGE (U.S.) INC., CLEVELAND INTEGRITY SERVICES, INC. and CYPRESS ENVIRONMENTAL MANAGEMENT-TIR, LLC. | **Case No. 2:19-cv-1080-WSS-LPL** |

**ROBERTSON'S MOTION TO ENFORCE COMPLIANCE**
**WITH THIRD-PARTY SUBPOENA**

**1.      BACKGROUND.**

Robertson moves to compel documents stemming from a third-party subpoena served March 8, 2021 on Avery Technical Resources, Inc. (Avery). *See* Third-Party Subpoena to Avery, attached as Exhibit 1. The subpoena relates to the discovery of contact information for certain putative class members in preliminarily approved Rule 23 and FLSA settlement in an action currently pending in the Western District of Pennsylvania, *Robertson, et. al. v. Enbridge (US) Inc., et. al.*, No. 2:19-cv-1080-WSS-LPL Doc. 272 (W.D.P.A. Fe. 25, 2021) (Stickman, J.) (the Underlying Action).

1

Therein, Robertson brings claims against his alleged employer, Enbridge (US) Inc. (Enbridge), for violations of the FLSA and state wage and hour laws. The Court in the Underlying Action preliminarily approved the settlement for a putative class consisting of:

> All Plaintiffs, Opt-in Plaintiffs, and current or former Inspectors who performed work on Defendant Enbridge (U.S.) Inc. pipeline or projects (including the pipeline or projects of Spectra Energy Corp. or affiliated entities) at any time from September 17, 2017 to September 17, 2020 working in the United States; and employed by the Vendor Companies.

*See* Approval Order attached as Exhibit 2.

Numerous members of the settlement class in the Underlying Action were staffed to Enbridge through third-party vendors. Enbridge claims it does not have access to many of these workers' contact information to facilitate notice as required by the Court. *See* Underlying Settlement Agreement attached as Exhibit 3 ¶4. Enbridge further claims that such information is in the sole possession of the third-party vendors who sourced these workers to Enbridge. *Id.*

> 4. **Class List and Allocation:** To the extent it is able to do so, Enbridge shall provide the data listed in the Class List to Class Counsel and the Settlement Administrator within 30 days of the execution of this Agreement. Enbridge does not have records of the addresses, phone numbers, social security numbers, or email addresses of the Eligible Rule 23 Class Members and Eligible FLSA Collective Members. Enbridge has requested this information from the Vendor Companies (as that term is defined herein and in the *Aguilar* Settlement) and will cooperate with Class Counsel in seeking to obtain this data. The Parties will work together to allocate the settlement funds based on the information provided in the Class List (as that term is defined herein and in the *Aguilar* Settlement).

As such, the Court in the Underlying Action approved the settlement agreement and the Parties agreed for Robertson's counsel to send third-party subpoenas seeking the putative class members' contact information and contract dates to those third-party vendors.

Importantly, the parties in the Underlying Action agreed to the language to be used in the third-party subpoenas seeking settlement class member contact information and other documents:

**REQUESTS FOR PRODUCTION**

1. For each Inspector employed by Vendor Company and who worked on an Enbridge pipeline or project (including Spectra pipelines or projects) between September 17, 2017 to September 17, 2020, provide the following information:

    a. Name;

    b. Address;

    c. Phone Number;

    d. Email Address;

    e. Social Security Number;

    f. List of states Inspector performed work on Enbridge pipelines or projects (including Spectra pipelines or projects) between September 17, 2017 and September 17, 2020;

    g. Dates of assignment to work on Enbridge pipeline or projects (including Spectra pipelines or projects) between September 17, 2017 and September 17, 2020;

    h. Number of weeks worked on Enbridge pipelines or projects (including Spectra pipelines or projects) between September 17, 2017 and September 17, 2020; and

    i. Number of weeks worked on Enbridge pipelines or projects (including Spectra pipelines or projects) in each state between September 17, 2017 and September 17, 2020.

Everyone in the Underlying Action agrees the request is narrowly tailored to obtain information necessary for Robertson to facilitate notice in the Underlying Action and to calculate damages.

Prior to settlement, Enbridge advised Robertson that Avery sourced additional settlement class members to Enbridge. Thereafter, Robertson served Avery with a third-party subpoena containing the narrowly tailored request for the putative class members' contact and damages information (as agreed to by the parties and approved by the Court in the Underlying Action) in accordance with the Court's Order. *See* Ex. 1.

Avery refuses to produce the information requested. Avery claims it need not produce the information because it says, without any proof, that each one of the inspectors it sourced to Enbridge

agreed to arbitrate their claims **against Avery** such that they are necessarily excluded from participating in the Underlying Action. *See* Avery's Objections to Subpoena, attached as Exhibit 4. Avery fails to explain how this agreement to arbitrate with Avery prevents any of the workers it staffed to Enbridge from joining a settlement class for claims against Enbridge. Regardless, Enbridge is seeking to settle and send notice to all the inspectors Avery staffed to Enbridge. Enbridge is implicitly declining to exercise any rights it may have under the Avery arbitration agreement. Avery cannot make Enbridge arbitrate. Avery nevertheless unilaterally decided to ignore the Court's Order in the Underlying Action granting preliminary approval of the settlement and allowing Robertson to obtain the information he seeks in his subpoena, because it has an arbitration agreement.

Again, the workers whose contact information Robertson seeks in its subpoena to Avery are part of the preliminarily approved settlement in the Underlying Action. *See* Ex. 2. The court in the Underlying Action did not exclude those inspectors sourced to Enbridge from Avery from its Order. *Id.* Enbridge is not seeking to enforce Avery's purported arbitration agreement. Robertson's subpoena to Avery seeks only the identities and contact information of these workers that is necessary to send notice to them as ordered by the Court (and agreed to by the parties) in the Underlying Action and to calculate their damages, if any.

Robertson thus moves this Court, as the court of compliance, to enforce Avery's compliance with the subpoena served by Robertson on March 8, 2021, so that the potential class members staffed by Avery to Enbridge may receive settlement notice as ordered by the court in the Underlying Action.

2. **THE COURT SHOULD TRANSFER THIS DISPUTE TO THE COURT OF THE UNDERLYING ACTION.**

Robertson requests the Court transfer this Motion to Compel, so that Avery may make its arguments regarding notice and relevancy to the court of the Underlying Action in Western District of Pennsylvania, which approve settlement as to Avery's workers. Under Federal Rule of Civil Procedure 45(f), "[w]hen the court where compliance is required did not issue the subpoena, it may

4

transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." *Bell v. ATH Holding Co., LLC*, MC 18-148, 2018 WL 3429710, at *4 (E.D. Pa. July 16, 2018)

Rule 45(f) does not explain what qualifies as an exceptional circumstance. *See The Dispatch Printing Co. v. Zuckerman*, 16CV80037, 2016 WL 335753, at *2 (S.D. Fla. Jan. 27, 2016) (noting the Advisory Committee finds transfer "is appropriate: (1) when the issuing court has already ruled on issues presented by the motion, and (2) when the same discovery issues are likely to arise in many districts"). "The Advisory Committee Notes to Rule 45 provide when determining whether exceptional circumstances exist, the 'prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions.' But the Advisory Committee Notes further explain transfer may be warranted '**in order to avoid disrupting the issuing court's management of the underlying litigation**.' The Advisory Committee Notes provide the examples of when the issuing court has already ruled on the same issues presented by the motion or the same issues are likely to arise in discovery in many districts. In such instances, transfer to the issuing court is warranted to ensure uniformity of result." *Bell*, 2018 WL 3429710, at *4 (emphasis added). The proponent of transfer bears the burden of showing exceptional circumstances. *Id.* (citing advisory committee notes 2013 amendments).

Exceptional circumstances exist here due to the underlying Court's approval of the parties' settlement. Should Avery continue to refuse to produce relevant data and documents because it alleges its workers were covered by arbitration agreements, this argument is unavailing. It is not for Avery or this Court to determine who may participate in settlement. Indeed, this determination has already been made by the Western District of Pennsylvania and may not be altered by this Court or by any challenge from Avery, a non-party to the underlying proceedings. The parties agreed to settle Enbridge's liability

5

for these workers and agreed they would send notice of the settlement to these workers. The underlying court approved this settlement. Avery cannot escape production of the information sought here by arguing that the information is irrelevant or that Enbridge cannot settle the liability as to these workers. Such an argument would require this Court to overturn the Western District of Pennsylvania's finding.

The case of *Weddle v. Williams*, No. 18-MC-00225-RBJ-KLM, 2019 WL 1620815, at *5 (D. Colo. Apr. 15, 2019) supports transfer in this matter. There, the Court concluded that "exceptional circumstances" under Fed. R. Civ. P. 45(f) existed, because the interest in avoiding disrupting the underlying court's management of the underlying litigation outweighs the interests of the nonparty served with the subpoena in obtaining local resolution of the motion," and transferred a motion to quash to the underlying court. The Court reasoned that to balance the exceptional circumstances against the burden that transfer would impose on the subpoenaed party, courts weigh factors relating to the underlying litigation, including the complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation. *Id* at *4. The Court found that the Advisory Committee's notes to the 2013 amendment to Fed. R. Civ. P. 45(f) provided that the Court may find through case specific inquiry that the issuing court is, in fact, "in a superior position to resolved subpoena-related motions." *Id* at *5. The Court found that the underlying court's active management of discovery and familiarity with the underlying litigation's voluminous factual record and nuanced factual issues weighed in favor of transfer. *Id* at *4-5 (citing *In re Cassell*, 2016 WL 3645166, at *1 (transferring subpoena-related motion where the parties "heavily litigated the case, as evidenced by the 253 docket entries" and noting that such a case "differs from cases where the court in the underlying case may not have a great deal of familiarity with the issues in the case because a Motion to Quash from an out of district non-party is the first or one of a few motions in dispute.")). Like in *Weddle* and *In re Cassell*, the underlying court's familiarity with the

6

underlying litigation's voluminous record is evidenced by the 282 docket entries here. *See* Copy of Docket, attached as Exhibit 9. The Court in *Weddle* also analyzed the burden on the non-party and found that even though the non-party, her attorney, and her attorney's only office, were in Colorado, the regularity of telephonic appearances made any burden comparatively minimal[1]. *Id.* at 5-6; *see also Daggett v. Scott*, No. 15-MC-00065-CMA-MJW, 2015 WL 3407314, at *3–4 (D. Colo. May 26, 2015) (analyzing Fed. R. Civ. P 45(f) "exceptional circumstances" standard in an FLSA case, finding there would be little real burden on the non-party subject to subpoena where her attorneys are capable of entering appearances and appearing telephonically in the Court where the underlying case is pending). Here, unlike in *Weddle*, Avery is a large national company[2], represented by an international law firm with attorneys and offices across the United States, including in Pittsburgh where the underlying case is pending[3]. It can hardly be argued that transfer would be any burden on Avery, let alone a burden great enough to outweigh other considerations.

Any arguments by Avery regarding the relevancy or burden or production should be heard by the Pennsylvania Court. That Court is familiar with the dispute, including Enbridge's right to compel arbitration, or its choice here not to do so. That Court can best rule on the scope and necessity of discovery.

Transfer is proper because (1) Avery would not be overly burdened by the transfer because its attorneys are capable of entering appearances and appearing telephonically in Pennsylvania (2) the

---

[1] Due to current health and safety protocols surrounding COVID-19, all appearances before the underlying court in this matter in recent months have been virtual and/or telephonic, regardless of the location of the parties, witnesses, and/or counsel. Therefore, the potential burden on the non-party is even lighter than normal.

[2] Avery is now Workwise, see https://www.workrise.com/avery-technical-resources/ (last visited April 12, 2021). Workwise has more than 268,000 workers and 22 physical locations, see https://www.workrise.com/about-us/ ((last visited April 12, 2021).

[3] Avery is represented by Ogletree Deakins, an international law firm with offices across the United States, including Pittsburgh, where the underlying case is pending. This fact is even advertised by Ogletree Deakins on the letterhead it sent to undersigned counsel regarding Avery's objection to subpoena. See Exhibit 4.

history of Underlying Action is complex and the Western District of Pennsylvania is best suited to assess the merits of the discovery dispute; and, (3) the Western District of Pennsylvania has an interest in timely resolving the dispute without adjusting the any upcoming deadlines. Given case-specific considerations, the presiding Judge is in a superior position to determine the interpretation and application of his or her orders with respect to the merits of any objections and related motions. *See Weddle,* 2019 WL 1620815, at *5 (in light of the underlying Court's familiarity with the underlying litigation, the Court concluded that the litigation's complexity weighed in favor of transferring the subpoena-related motion to the underlying Court). To the extent that Avery stands on its refusal to produce documents based on its alleged arbitration agreements, the Pennsylvania Court should decide the validity of such objection.

Robertson therefore requests this Court transfer the Motion to Compel to the Western District of Pennsylvania, for Judge William Stickman and Magistrate Judge Lisa Pupo Lenihan to resolve this dispute.

**3.    ALTERNATIVELY, THE COURT SHOULD COMPEL AVERY TO COMPLY WITH ROBERTSON'S SUBPOENA.**

Rule 45 allows the court where compliance is required (or the issuing court if transfer is agreed to) to hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. FED. R. CIV. P. 45(e). When a non-party fails to respond or cooperate with a subpoena, a motion to compel and contempt hearing are the available remedies. FED. R. CIV. P. 45(d)(2)(B)(i). Thus, "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." *Id.* "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" FED. R. CIV. P. 26(b)(1). "The Court broadly construes relevancy, and a request for discovery should be considered relevant if it is possible that the information sought may be relevant to the claim or defense of any party."

8

*Tara Woods Ltd. P'ship v. Fannie Mae*, 265 F.R.D. 561, 567 (D. Colo. 2010). The party resisting discovery bears the burden of establishing the information does not come within the scope of relevance. *Id.*

There is no question that the information sought by Robertson's subpoena to Avery is relevant to the settlement agreement and damages in the Underlying Action. After all, such information will be used by Robertson to send court-approved notice to those settlement class members staffed by Avery to Enbridge in the Underlying Action and to calculate their damages. *See* Ex. 2.

### a. Courts Routinely Require Third Parties to Provide Class Information to Facilitate Notice and Settlement Despite Alleged Arbitration Agreements.

Courts generally require production of the identities and contact information of putative class members (including email addresses and telephone numbers) – the very information Robertson seeks from Avery in his subpoena because Enbridge does not possess it. Ex. 3 ¶4; *see, e.g.*, *Bryant v. Act Fast Delivery of Colorado, Inc.*, No. 14-CV-00870-MSK-NYW, 2015 WL 3929663, at *4 (D. Colo. June 25, 2015) (ordering defendant to produce the names, current or last known address, email addresses, and telephone numbers); *Miller v. Startek USA, Inc.*, No. 11-CV-00017-REB-CBS, 2011 WL 1883012, at *3 (D. Colo. May 17, 2011) (same); *Green v. Drake Beam Morin, Inc.*, No. 11-CV-01063-REB-CBS, 2011 WL 6046940, at *3 (D. Colo. Dec. 6, 2011) (same). This information is relative to discovery of those covered by the parties' litigation and its resolution.

Courts also routinely require third-party vendors to comply with subpoenas seeking identifying information about putative class members staffed by them to the defendant employer in FLSA collective actions like this where the alleged employer does not maintain contact information for the putative class members. *See, e.g.*, *Hennigar v. Applied Consultants, Inc.* No. 3:21-mc-0004-S-BT, Doc. 22 (N.D. Tex. Mar. 15, 2021) (overruling third-party vendor's objections to subpoena and compelling contact information in a conditionally certified FLSA collective action involving inspectors) attached as Exhibit 5; *Sanchez v. Schlumberger Tech. Corp.,* No. 2:17-cv-102, Doc. 103 (S.D. Tex. Jan. 22, 2019) (overruling third-party vendor's objection to subpoena and compelling "identifying and contact

9

information for the putative class members" in a conditionally certified FLSA collective action involving oilfield workers allegedly misclassified as independent contractors), attached as Exhibit 6; *Parrish v. Premier Directional Drilling, L.P.*, Civ. No. SA-16-CA-00417-DAE, 2017 WL 8774230, at *9 (W.D. Tex. Mar. 1, 2017) (denying motion to quash third-party subpoena seeking information concerning putative class members' working relationship with third-party vendor "[g]iven that the Court has conditionally certified a class of 'Directional Drillers' employed by, or working on behalf of, [Defendant] Premier Directional Drilling, L.P. as independent contractors at any time between three years prior to the date of certification and the present" and finding "the requests agreed upon by the parties to be reasonable.").

Unsurprisingly, courts routinely reject the same argument Avery makes here and allow notice to be sent to workers who may have executed arbitration agreements covering their claims. *See, e.g.*, *Flynn v. Sanchez Oil & Gas Corp.*, SA-19-CV-00867-JKP, 2020 WL 963892, at *3 (W.D. Tex. Feb. 27, 2020), *report and recommendation adopted*, 5:19-CV-0867-JKP-ESC, 2020 WL 1695689 (W.D. Tex. Apr. 7, 2020), *appeal dismissed*, 20-50350, 2020 WL 6287490 (5th Cir. Sept. 24, 2020); *Gordon v. TBC Retail Grp., Inc.*, 134 F.Supp.3d 1027, 1039 n. 9 (D. S.C. 2015) ("The court does not find this consideration compelling [that few class members could join because most executed arbitration agreements], as it prematurely assumes that such arbitration agreements are enforceable. Instead, the court finds that the better approach is to address arbitration issues after conditional certification, when the scope and substance of those issues become clearer."); *Mode v. S-L Distribution Co., LLC*, No. 3:18-cv-00150-RJC-DSC, 2019 WL 1232855, at *4 n. 3 (W.D.N.C. Mar. 15, 2019) ("Whereas here, when the Court has yet to determine whether Plaintiffs are employees or whether the Distributor [arbitration] Agreements will be upheld, it would be improper to preclude sending notice to those potential plaintiffs whose Distributor Agreements contained arbitration agreements."); *Weckesser v. Knight Enterprises S.E., LLC*, Civ. A. No. 2:16-cv-02053-RMG, 2018 WL 4087931, at *3 (D.S.C. Aug. 27, 2018) ("The potential opt-

10

in plaintiffs allegedly subject to arbitration agreements have not yet joined this action, and the Court therefore has no ability to determine whether any potential arbitration agreement[s] are enforceable against them."); *Amrhein v. Regency Mgmt. Servs., LLC*, Civ. No. SKG-13-1114, 2014 WL 1155356, at *10 (D. Md. Mar. 20, 2014) ("[T]he potential for arbitration will not forestall the [p]laintiffs' entitlement to conditional certification."); *Nesselrodte v. Underground Casino & Lounge, LLC*, Civ. A. No. 3:11-CV-92, 2012 WL 4378163, at *4 (N.D.W.Va. Sept. 25, 2012) (allowing notice to be sent to potential class members who the employer argued executed arbitration agreements where the employer had not moved to compel arbitration as to those individuals specifically, finding "the FAA does not forbid the Court from granting conditional certification for a collective action class under the FLSA based upon a relatively small group of the potential class signing an agreement to arbitrate any claims arising against the employer.").[4]

Similarly, courts routinely reject the notion that third-party vendors like Avery need not provide class information necessary to facilitate notice pursuant to a subpoena because a court or arbitrator may ultimately allow a non-signatory like Enbridge to enforce Avery's arbitration agreement. *See, e.g.*, *Flynn*, 2020 WL 963892, at *3 ("*JP Morgan* does not stand for the proposition that employees of a defendant cannot be sent notice because those employees may have an arbitration agreement with a third party that precludes them suing that third party."); *Miller v. The Steam Generating Team, LLC,* No. 2:20-mc-00234-RJC, 2020 WL 1821698, at *3-4 (W.D. Pa. Apr. 10, 2020) (compelling third-party

---

[4] *See also Thomas v. Papa John's Int'l, Inc.*, Case No. 1:17-CV-411, 2019 WL 4743637, at *3 (S.D. Ohio Sept. 29, 2019) ("District courts have consistently held that the existence of arbitration agreements is irrelevant to collective action approval because it raises a merits-based determination."); *Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157, 2019 WL 4601930, at *7 (S.D. Ohio Sept. 23, 2019) ("Several courts have found that the presence of arbitration agreements does not defeat a motion for conditional certification") (collecting cases); *Crosby v. Stage Stores, Inc.*, 348 F.Supp.3d 742, 752 (M.D. Tenn. 2018) (holding that it is inappropriate to consider an arbitration agreement at the conditional certification stage of a FLSA collective action); *Brooks v. C.H. Robinson Int'l, Inc.*, No. 416CV00939761HFS, 2017 WL 10506772, at *3 (W.D. Mo. May 9, 2017) (finding even if potential class members signed arbitration agreements they should be included in the class list for purposes of conditional certification because arbitration issues are irrelevant at this stage).

11

vendor to provide identifying information for inspectors sourced to the defendant employer and rejecting the vendor's argument that the inspectors "are precluded from pursuing collective relief against [the defendant employer] by arbitration agreements[.]"); *Romero v. Smith Mgmt. and Consulting, LLC*, Civ. A. No. 19-mc-91493-PBS, Doc. 28, at *4-5, 7-9 (D. Mass. Mar. 4, 2020) (granting employee's motion to enforce compliance with third-party subpoena and compelling third-party vendor to provide contact information for the putative class members it staffed to the defendant employer so such individuals could receive notice), attached as Exhibit 7; *Hall v. Dominion Energy, Inc.*, No. 318-cv-321, Doc. 78 (E.D. Va. Apr. 26, 2019) (granting employee's motion to enforce third-party subpoena and compelling identifying class information for workers staffed by third-party vendor to the defendant employer to facilitate settlement discussions and rejecting third-party vendor's argument it did not have to provide the same because the workers purportedly signed arbitration agreements precluding them from participating in the litigation), attached as Exhibit 8.

Recently, the Fourth Circuit rejected a nearly identical argument. *See In re Cypress Environmental Mgmt.-TIR, LLC*, No. 21-1136, Doc. 20 (4th Cir. 2021) (denying CIS's petition for writ of mandamus of an order requiring CIS to respond to a third-party subpoena and provide class information to facilitate notice). In that case, an inspector sued Dominion for violating the FLSA and the court conditionally certified a class of "[a]ll Inspectors who were paid a day-rate with no overtime while working for Dominion between December 11, 2017 and December 11, 2020." *Sziber v. Dominion Energy, Inc.*, No. 3:20-CV-00117, Doc. 43 (E.D. Va. Dec. 11, 2020). To collect the names and contact information for the inspectors it sourced from third-party vendors, *id.*, Dominion sent third-party subpoenas. The staffing company, CIS, refused to provide the necessary information, claiming the arbitration agreements CIS maintained with its inspectors precluded their participation in the lawsuit. *Id.* at Doc. 49-50 (E.D. Va. Jan. 6, 2021). Like Avery, CIS relied on the existence of an arbitration agreement to argue it need not provide the requested information. *Id.* at Doc. 55.

The *Sziber* court refused to evaluate the enforceability of the arbitration agreements in determining whether to enforce the third-party subpoena and ordered CIS to respond to the subpoena. *Id.* at Doc. 57 (E.D. Va. Jan. 14, 2021), attached as <u>Exhibit 10</u>. CIS then filed a petition for writ of mandamus in the Fourth Circuit. *In re Cypress Environmental Mgmt.-TIR, LLC*, No. 21-1136, Doc. 2 (4th Cir. 2021). The Fourth Circuit summarily denied CIS's petition. *Id.* at Doc. 20. The existence of an arbitration agreement does not prevent production of this information, particularly here where the party facing liability, Enbridge, is choosing not to enforce the arbitration agreement. Enbridge and plaintiffs need the contact information held by Avery.

The contact information sought by Robertson from Avery is precisely the information the Court ordered and agreed to by the Parties for Robertson to obtain to facilitate settlement notice in the Underlying Action. *See* Ex. 2; Ex. 3. Without this information, the parties in the Underlying Action cannot provide notice to the subset of putative class members staffed by Avery to Enbridge as ordered by the Court or calculate their damages. *Id.* The language in the subpoena to Avery was agreed to by the parties in the Underlying Action. *Id.* Moreover, Robertson's limited request for information is narrowly tailored to a specific Avery worker – the inspectors it staffed to Enbridge. *See* Ex. 1.

Enbridge claims it does not have the contact information for these workers, which is precisely why a third-party subpoena was necessary. *See* Ex. 3 ¶4. Avery cannot deny it possesses the requested documents. *See* 29 U.S.C. § 211(c) ("[e]very employer … shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices maintained by him"); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (finding it is the duty of the employer to keep proper records of wages and hours worked). It simply refuses to substantively respond to Robertson's subpoena because it believes Enbridge should have to arbitrate these claims. Not only does it have no standing to control how Enbridge resolves these claims, this is a premature attempt to battle the merits of potential class members' claims who have not yet joined the Underlying

Action (and may never). *Bradford v. Team Pizza, Inc.,* Case No. 1:20-cv-60, 2020 WL 349650, at *5 (S.D. Ohio June 29, 2020) ("Moreover, given that none of these delivery drivers have joined this suit and defendants cannot presume that drivers with arbitration agreements will ultimately opt-in to this suit, it is premature for the Court [to] consider the arbitration agreements at the conditional certification stage.").

Robertson's limited, court-approved request is indisputably relevant and proportional to the needs of the Underlying Action and necessary to facilitate notice to, and calculate the damages of, the subset of putative class members sourced by Avery to Enbridge as Ordered therein. The Court should compel Avery to fully respond to Robertson's straightforward request for putative class members' contact information and information necessary to calculate their damages as specified herein.

### b.  Any Reliance on *JPMorgan* or *Bigger* is Misplaced.

Robertson anticipates that Avery will claim it need not provide him with the contact information of those inspectors sourced by Avery to Enbridge based on two recent decisions from the Fifth Circuit (*In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019) and Seventh Circuit (*Bigger v. Facebook, Inc.*, 947 F.3d 1043 (7th Cir. 2020), respectively. Any argument that *JPMorgan* or *Bigger* create a bright line rule prohibiting employees with arbitration agreements from receiving notice of a settlement of a collective action is nothing but hyperbole.

In *JPMorgan*, the court explicitly stated, "an employer that seeks to avoid a collective action, **as to a *particular employee***, has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement **for *that* employee**." 916 F.3d at 503 (emphasis added). It further noted that "if the employer fails to establish the existence of a valid arbitration agreement as to an employee, that employee would receive the same notice as others." *Id.* Notably, *JPMorgan* did not involve a settlement. The defendant was actively trying to prevent notice of conditional certification from issuing based on its direct agreements with those employees. *JPMorgan* does not

14

stand for the proposition that a nonparty to the litigation may withhold information based on its contention these workers should not receive notice, nor does it permit a nonparty to challenge a court's decision to allow notice. *See Flynn v. Sanchez Oil & Gas Corp.*, SA-19-CV-00867-JKP, 2020 WL 963892, at *3 (W.D. Tex. Feb. 27, 2020), adopted, 2020 WL 1695689 (W.D. Tex. Apr. 7, 2020).

Similarly, *Bigger* held individuals who purportedly agreed to arbitrate could be excluded from notice if "the defendant establishes by a preponderance of the evidence the existence of a valid arbitration agreement for ***each* employee** it seeks to exclude from receiving notice." 947 F.3d at 1047 (emphasis added). The court further noted that, "[t]o be clear, if the employer does not prove that an employee entered a valid arbitration agreement, then the court may authorize notice to that employee[.]" *Id.* at 1050. Critically, the court found that courts did not have "to simply take an employer at its word when it says certain employees entered valid arbitration agreements" in determining whether to issue notice to workers alleged to have committed to arbitration. *Id.* at 1051. Nothing in *Facebook* permits Avery to challenge an approved settlement or decide who receives notices of a settlement to which it is not a party. Just like *JPMorgan*, *Facebook* was actively seeking to prevent notice based on arbitration agreements. That is not the case here. Enbridge wants to send notice of the settlement to these workers. It does not wish to enforce any rights it may have to have an arbitrator determine whether Enbridge may enforce the Avery agreement or even make these workers arbitrate their claims against it.

Thus, Avery cannot violate the Underlying Court's approval of the Parties' agreement or show that notice should not issue to these workers by claiming Enbridge should have to arbitrate these claims. The Parties to the Underlying Action have agreed to resolve the claims of the inspectors Avery staffed to Enbridge. The Court in the Underlying Action has preliminarily approved the Rule 23 and FLSA settlement. The Parties need the requested information from Avery to effectuate the settlement notice process. Robertson respectfully requests this Court order Avery to comply with the subpoena

and provide the information necessary for the Parties to comply with the Underlying Court's order approving the settlement and directing the Parties to issue notice to the settlement class members.

Respectfully Submitted,

*/s/ William R. Liles*
Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
William R. Liles
Texas Bar No. 24083395
JOSEPHSON DUNLAP LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone:  (713) 352-1100
Facsimile:   (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
wliles@mybackwages.com

Richard J. (Rex) Burch
Texas Bar No. 24001807
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 1325
Houston, Texas 77046
Telephone:  (713) 877-8788
Facsimile:   (713) 877-8065
rburch@brucknerburch.com

**Attorneys for Plaintiff**

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with Avery and/or representatives of Avery in an attempt to get it to comply with Robertson's subpoena and concerning the relief sought herein. At the time of the filing of this Motion, Avery is opposed to the relief sought in this motion.

/s/ *William R. Liles*
William R. Liles

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, by email, and by CMRRR, on April 14, 2021.

/s/ *William R. Liles*
William R. Liles